

SOUTHWEST FLORIDA

**BOARD OF COUNTY COMMISSIONERS**

Bob Janes
*District One*

Brian Bigelow
*District Two*

Ray Judah
*District Three*

Tammy Hall
*District Four*

Frank Mann
*District Five*

Donald D. Stilwell
*County Manager*

David M. Owen
*County Attorney*

Diana M. Parker
*County Hearing Examiner*

(239) 533-8883

February 29, 2008

Mr. Jim Molnar
T.Y. Lin International
2400 First Street, Suite 200
Ft. Myers, FL 33901

SUBJECT: **CN-07-13 CEI SERVICES FOR VARIOUS LEE COUNTY ROADS COLLEGE PARKWAY INTERSECTION IN CONJUNCTION WITH SIX LANING-CYPRESS LAKE DRIVE TO BOY SCOUT DRIVE**

ENCLOSURE (1): Executed Copy of Service Provider Agreement/Professional Services Agreement
ENCLOSURE (2): PSA/SPA Invoice Statement Form

Dear Mr. Molnar:

Enclosed is your executed copy of the Professional Services Agreement for the project known as "CN-07-13 CEI Services For Various Lee County Roads – College Parkway Intersection In Conjunction With Six Laning-Cypress Lake Drive to Boy Scout Drive". Please note the contract number for this project is **4206**. This contract number will also serve as your Purchase Order Number for this project and must be on all invoice statements.

If you should have any questions, please contact our office at the above number.

Sincerely,
CONTRACTS MANAGEMENT

Lisa Crone
Lisa Crone
Contracts Specialist

C: Mr. Don DeBerry, DOT, Project Manager
Internal Services, Fiscal
Contracts Management

P.O. Box 398, Fort Myers, Florida 33902-0398 (239) 533-2111
Internet address http://www.lee-county.com
AN EQUAL OPPORTUNITY AFFIRMATIVE ACTION EMPLOYER

Recycled Paper

4206

# PROFESSIONAL SERVICES AGREEMENT

This PROFESSIONAL SERVICES AGREEMENT is made and entered into this 19th day of February, 2008, between the Board of County Commissioners of LEE COUNTY, a political subdivision of the STATE OF FLORIDA hereinafter referred to as the "COUNTY", and T.Y. Lin International Construction Services, Inc. hereinafter referred to as the "CONSULTANT".

## WITNESSETH

WHEREAS, the COUNTY desires to obtain the professional Construction Engineering & Inspection and Post Design services of said CONSULTANT to provide and perform professional services as further described hereinafter concerning the Project to be referred to and identified as: CN-07-13 **CE&I Services for the Summerlin Rd / College Parkway Intersection in conjunction with Six Laning - Cypress Lake Dr. to Boy Scout Dr.**, and

WHEREAS, the CONSULTANT hereby certifies that CONSULTANT has been granted and possesses valid, current licenses to do business in the State of Florida and in Lee County, Florida, issued by the respective State Boards and Government Agencies responsible for regulating and licensing the professional services to be provided and performed by the CONSULTANT pursuant to this Agreement; and

WHEREAS, the CONSULTANT has reviewed the professional services required pursuant to this Agreement and is qualified, willing and able to provide and perform all such services in accordance with the provisions, conditions and terms hereinafter set forth; and

WHEREAS, the selection and engagement of the CONSULTANT has been made by the COUNTY in accordance with the provisions of the Consultants' Competitive Negotiation Act, Chapter 287.055, Florida Statutes, and in accordance with the provisions of the Lee County Contract Manual for Professional Services as approved and put into effect by the Lee County Board of County Commissioners, September 25, 2001, and as subsequently revised.

NOW, THEREFORE, in consideration of the mutual covenants, terms and provisions contained herein, the parties hereto agree that with the mutual acceptance of this Agreement as indicated hereinafter by the execution of this Agreement by both parties that a Contract shall exist between both parties consisting of:

## ARTICLE 1.00 - SCOPE OF PROFESSIONAL SERVICES

CONSULTANT hereby agrees to provide and perform the professional services required and necessary to complete the services and work as set forth EXHIBIT "A", entitled "SCOPE OF PROFESSIONAL SERVICES", which EXHIBIT "A" is attached hereto and made a part of this Agreement.

## ARTICLE 2.00 - DEFINITIONS

The following definition of terms associated with this Agreement is provided to establish a common understanding between both parties to this Agreement as to the intended usage, application, and interpretation of such terms pertaining to this Agreement.

C13a
2-19-08

## 2.01 COUNTY

The term COUNTY shall refer to the Board of County Commissioners of Lee County, a political subdivision of the State of Florida, and any official and/or employees thereof who shall be duly authorized to act on the COUNTY'S behalf relative to this Agreement.

## 2.02 CONSULTANT

The term CONSULTANT shall refer to the individual or firm offering professional services which by execution of this Agreement shall be legally obligated, responsible, and liable for providing and performing any and all of the services, work and materials, including services and/or work of sub-consultants and subcontractors, required under the covenants, terms and provisions contained in this Agreement and any and all Change Orders thereto.

## 2.03 PROFESSIONAL SERVICES

The term PROFESSIONAL SERVICES shall refer to all of the services, work, materials and all related professional, technical and administrative activities which are necessary to be provided and performed by the CONSULTANT and its employees and any and all sub-consultants and subcontractors the CONSULTANT may engage to provide, perform and complete the services required pursuant to the covenants, terms and provisions of this Agreement.

## 2.04 SUB-CONSULTANT

The term SUB-CONSULTANT shall refer to any individual or firm offering professional services which is engaged by the CONSULTANT to assist the CONSULTANT in providing and performing the professional services, work and materials for which the CONSULTANT is contractually obligated, responsible and liable to provide and perform under this Agreement. The COUNTY shall not be a party to, responsible or liable for, or assume any obligation whatever for any Agreement entered into between the CONSULTANT and any SUB-CONSULTANT.

## 2.05 SUBCONTRACTOR

The term SUBCONTRACTOR shall refer to any individual, company or firm providing other than professional services which is engaged by the CONSULTANT to assist the CONSULTANT in providing and performing services, work and materials for which the CONSULTANT is contractually obligated, responsible, and liable to provide and perform under this Agreement. The COUNTY shall not be a party to, responsible or liable for, or assume any obligation whatever for any Agreement entered into between the CONSULTANT and any SUBCONTRACTOR.

## 2.06 PROJECT

The term PROJECT shall refer to such facility, system, program or item as described in the summary statement set forth in the Preamble on Page One of this Agreement.

## 2.07 BASIC SERVICES

The term BASIC SERVICES shall refer to the professional services set forth and required pursuant to this Agreement and as described in further detail in the attached EXHIBIT "A", entitled "SCOPE OF PROFESSIONAL SERVICES", which EXHIBIT "A" is attached hereto and made a part of this Agreement.

## 2.08  ADDITIONAL SERVICES

The term ADDITIONAL SERVICES shall refer to such professional services as the COUNTY may request and authorize, in writing, the CONSULTANT to provide and perform relative to this Agreement which are not included in the BASIC SERVICES. Additional services shall be authorized by the execution of both parties to this Agreement by a Change Order Agreement.

## 2.09  CHANGE ORDER

The term CHANGE ORDER shall refer to a written document, CHANGE ORDER AGREEMENT, executed by both parties to this Agreement setting forth and authorizing changes to the agreed upon Scope of Professional Services and Tasks, Compensation and Method of Payment, Time and Schedule of Performance, or Project Guidelines and Criteria as such were set forth and agreed to in the initial AGREEMENT, SUPPLEMENTAL TASK AUTHORIZATION(S), or previous CHANGE ORDERS issued thereto. The CHANGE ORDER document, which shall be executed on a Lee County standard form, shall set forth the authorized changes to the: scope of professional services, tasks, work or materials to be performed or provided by the CONSULTANT; the compensation and method of payment; the schedule or time period for performance and completion, and the guidelines, criteria and requirements pertaining thereto.

The amount of the change in contract compensation and time set forth in any and all Change Orders executed and issued under this Agreement shall be understood and agreed by both Parties to this Agreement to be fair, equitable, adequate and complete. The changed compensation shall be understood and agreed to be the total of all costs associated with or impacted by the Change Order including, but not limited to any and all direct costs, indirect costs and associated costs which may result from or be caused by the Change Order, and shall be understood and agreed to include a fair, equitable and adequate adjustment to cover the CONSULTANT'S general administrative and overhead costs and profit.

In the event the County decides to delete all, or portions, of the Scope of Services, Task(s), or Requirements set forth in the initial Agreement, Supplemental Task Authorizations or previously authorized Change Orders, the COUNTY may do so by the unilateral issuance of a written Change Order to the CONSULTANT. Such a unilaterally issued Change Order shall set forth, if appropriate, (1) an agreement by both the COUNTY and the CONSULTANT establishing changes in the amount of compensation to be paid the CONSULTANT as a result of the deletion or decrease in services required, or (2) in the absence of such an agreement concerning compensation, the unilaterally issued Change Order shall set forth the basis to be used in subsequently considering, and reaching agreement on change(s) in the compensation to be paid the CONSULTANT. The failure on the part of the CONSULTANT to execute a Change Order issued unilaterally by the COUNTY to effect a deletion or decrease in the services required shall have no effect on, or otherwise prevent the COUNTY from exercising its rights to direct the stated deletion or decrease in the services to be provided or performed by the CONSULTANT.

## 2.11  SUPPLEMENTAL TASK AUTHORIZATION

The term Supplemental Task Authorization as used refers to a written document executed by both parties to an existing Professional Services Agreement, or Service Provider Agreement, setting forth and authorizing a limited number of Professional Services, tasks, or work. Such Supplemental Task Authorizations are consistent with and have previously been included within the scope of services in the initial Professional Services Agreement, or Service Provider Agreement, for which authorization has not been previously given or budgeted.

## 2.12 DEPARTMENT DIRECTOR

The term DEPARTMENT DIRECTOR shall refer to the Director of the Department requesting the service, employed by the Lee County Board of County Commissioners to serve and act on the COUNTY'S behalf, as it relates to this Project. The Chairman of the Board of County Commissioners, or his designated representative, shall act on behalf of the COUNTY to execute any and all CHANGE ORDER(S) or SUPPLEMENTAL TASK AUTHORIZATION(S) approved by the COUNTY and issued to the CONSULTANT pursuant to this Agreement. The DEPARTMENT DIRECTOR, within the authority conferred by the Board of County Commissioners, acting as the COUNTY'S designated representative shall issue written notification to the CONSULTANT of any and all changes approved by the COUNTY in the CONSULTANT'S: (1) compensation (2) time and/or schedule of service delivery; (3) scope of services; or other change(s) relative to BASIC SERVICES and ADDITIONAL SERVICES pursuant to this Agreement, or CHANGE ORDER(S) or SUPPLEMENTAL TASK AUTHORIZATION(S) pertaining thereto. The DEPARTMENT DIRECTOR shall be responsible for acting on the COUNTY'S behalf to administer, coordinate, interpret and otherwise manage the contractual provisions and requirements set forth in this Agreement, CHANGE ORDER(S), or SUPPLEMENTAL TASK AUTHORIZATION(S) issued thereunder.

## 2.13 PROJECT MANAGER

The term PROJECT MANAGER shall refer to the person employed or retained by the COUNTY and designated, in writing, to serve and act on the COUNTY'S behalf to provide direct contact and communication between the COUNTY and CONSULTANT with respect to providing information, assistance, guidance, coordination, review, approval and acceptance of the professional services, work and materials to be provided and performed by the CONSULTANT pursuant to this Agreement and such written SUPPLEMENTAL TASK AUTHORIZATION(S) and CHANGE ORDER(S) as are authorized. The PROJECT MANAGER is not authorized to, and shall not, issue any verbal, or written, request or instruction to the CONSULTANT that would have the effect, or be interpreted to have the effect, of modifying or changing in any way whatever the: (1) Scope of Services to be provided and performed by the CONSULTANT; (2) The time the CONSULTANT is obligated to commence and complete all such services; (3) The amount of compensation the COUNTY is obligated or committed to pay the CONSULTANT. The PROJECT MANAGER shall review and make appropriate recommendations on all requests submitted by the CONSULTANT for payment for services and work provided and performed, and reimbursable costs and expense, as provided for in this Agreement and approved CHANGE ORDER(S),or SUPPLEMENTAL TASK AUTHORIZATION(S) thereto.

## 2.14 LUMP SUM FEE(S)

Lump Sum Fee(s), hereinafter identified as L.S., are understood and agreed to include all direct and indirect labor costs, personnel related costs, overhead and administrative costs, costs of sub-consultant(s) and/or subcontractor(s), out-of-pocket expenses and costs, professional service fee(s) and any other costs or expenses which may pertain to the services and/or work to be performed, provided and/or furnished by the Consultant as may be required and/or necessary to complete each and every task set forth in the Scope of Professional Services, Exhibit "A", or as may be set in subsequent Supplemental Task Authorizations, and/or Change Orders agreed to in writing by both parties to this Agreement.

## 2.15 NOT-TO-EXCEED FEE(S)

When all, or any portion, of the CONSULTANT'S compensation to provide and perform the services and work necessary and required pursuant to the Tasks set forth in Agreement Exhibit "A", and any Change Orders, Supplemental Task Authorizations, and Work Orders authorized thereto, is established to be made on a NOT-TO-EXCEED (N.T.E.) amount basis, it is mutually understood and agreed that such compensation for each completed Task shall be made on the following basis:

For the actual hours necessary, required and expended by the CONSULTANT'S professional and technical personnel, multiplied by the applicable hourly rates for each classification or position as set forth in Attachment No. 1 to Exhibit "B" to the above referenced Agreement and any Change Orders or Supplemental Task Authorizations authorized thereto; and

For the actual necessary, required and expended non-personnel reimbursable expenses and costs, multiplied by the applicable "Basis of Charges" for each item as set forth in Attachment No. 2 to Exhibit "B" to the above referenced Agreement and any Change Orders or Supplemental Task Authorizations authorized thereto; and

For the actual, necessary and required hours, and non-personnel expenses and costs, expended by Sub-Consultants and SubContractors engaged by the CONSULTANT, multiplied by such hourly rates and unit costs as are agreed to by the COUNTY and the CONSULTANT and as are set forth as a part of the above referenced Agreement and any Change Orders or Supplemental Task Authorizations authorized thereto; and

With the understanding and agreement that the COUNTY shall pay the CONSULTANT for all such costs and expenses within the established Not-to-Exceed amount for each Task or Sub-Task subject to the CONSULTANT presenting an itemized and detailed invoice with appropriate supporting documentation attached thereto to show evidence satisfactory to the COUNTY covering all such costs and expenses; and

With the understanding and agreement that the CONSULTANT'S invoices and all payments to be made for all Not-to-Exceed amounts shall be subject to the review, acceptance and approval of the COUNTY; and
With the understanding and agreement that when the CONSULTANT'S compensation is established on a Not-to-Exceed basis for a specific Task(s) or Sub-Task(s) the total amount of compensation to be paid the CONSULTANT to cover all personnel costs, non-personnel reimbursable expenses and costs, and Sub-Consultant and SubContractor costs for any such specific Task(s) or Sub-Task(s) shall not exceed the amount of the total Not-to-Exceed compensation established and agreed to for each specific Task(s) or Sub-Task(s). In the event the amount of compensation for any Task(s) or Sub-Task(s) to which the CONSULTANT is entitled on the Not-to-Exceed basis set forth above is determined to be necessary, required and actually expended and is determined to be actually less than the Not-to-Exceed amount established for the specific Task or Sub-Task, it is understood and agreed that any unexpended amount under a specific Task or Sub-Task may not be used, applied, transferred, invoiced or paid for services or work provided or performed on any other Task(s) or Sub-Task(s).

ARTICLE 3.00 - OBLIGATIONS OF THE CONSULTANT

The obligations of the CONSULTANT with respect to all the BASIC SERVICES and ADDITIONAL SERVICES authorized pursuant to this Agreement shall include, but not be limited to, the following:

3.01 LICENSES

The CONSULTANT agrees to obtain and maintain throughout the period this Agreement is in effect all such licenses as are required to do business in the State of Florida and in Lee County, Florida, including, but not limited to, licenses required by the respective State Boards and other governmental agencies responsible for regulating and licensing the professional services provided and performed by the CONSULTANT pursuant to this Agreement.

3.02 PERSONNEL

(1) QUALIFIED PERSONNEL

The CONSULTANT agrees when the services to be provided and performed relate to a professional service(s) which, under Florida Statutes, requires a license, certificate of authorization or other form of legal entitlement to practice such services, to employ and/or retain only qualified personnel to be in responsible charge of all BASIC SERVICES and ADDITIONAL SERVICES to be provided pursuant to this Agreement.

(2) CONSULTANT'S PROJECT DIRECTOR

The CONSULTANT agrees to employ and designate, in writing, a qualified and, if required by law, a licensed professional to serve as the CONSULTANT'S Project Director. The CONSULTANT'S Project Director shall be authorized and responsible to act on behalf of the CONSULTANT with respect to directing, coordinating and administering all aspects of the services to be provided and performed under this Agreement thereto. The CONSULTANT'S Project Director shall have full authority to bind and obligate the CONSULTANT on any matter arising under this Agreement unless substitute arrangements have been furnished to the COUNTY in writing. The CONSULTANT agrees that the Project Director shall devote whatever time is required to satisfactorily direct, supervise and manage the services provided and performed by the CONSULTANT throughout the entire period this Agreement is in effect. The person selected by the CONSULTANT to serve as the CONSULTANT'S Project Director shall be subject to the prior approval and acceptance of the COUNTY.

(3) REMOVAL OF PERSONNEL

The CONSULTANT agrees, within thirty (30) calendar days of receipt of a written request from the COUNTY, to promptly remove and replace the CONSULTANT'S Project Director, or any other personnel employed or retained by the CONSULTANT, or personnel of the sub-consultant(s) or subcontractor(s) engaged by the CONSULTANT to provide and/or perform services and/or work pursuant to the requirements of this Agreement, who the COUNTY shall request, in writing, be removed, which request may be made by the COUNTY with or without cause.

## 3.03 TIMELY ACCOMPLISHMENT OF SERVICES

The timely performance and completion of the required services, work and materials is vitally important to the interests of the COUNTY. Time is of the essence for all of the duties and obligations contained in this Agreement thereto. The COUNTY may suffer damages in the event that the CONSULTANT does not accomplish and complete the required services in a timely manner. The CONSULTANT agrees to employ, engage, retain and/or assign an adequate number of personnel throughout the period of this Agreement so that all BASIC SERVICES and ADDITIONAL SERVICES will be provided, performed and completed in a timely and diligent manner throughout.

## 3.04 STANDARDS OF PROFESSIONAL SERVICE

The work and/or services to be provided and/or performed by the CONSULTANT and by any Sub-Consultant(s) and/or SubContractor(s) engaged by the CONSULTANT as set forth in the Scope of Professional Services, Exhibit "A", shall be done in accordance with the generally accepted standards of professional practice and in accordance with the laws, rules, regulations, ordinances, codes, policies, standards or other guidelines issued by those governmental agencies which have jurisdiction over all or a portion of this project and which are in effect at the time the COUNTY approves this Agreement, or which may subsequently be changed or revised. Any subsequent change or revision to such laws, rules, regulations, ordinances, codes, policies, standards or other guidelines which requires the CONSULTANT to provide and/or perform work and/or services which are significantly different from that set forth in the Scope of Professional Services, Exhibit "A", shall serve as a basis for the COUNTY to consider the development and issuance of a Change Order to provide for a change to, or Additional Services to the services set forth in the Agreement.

## 3.05 CORRECTION OF ERRORS, OMISSIONS OR OTHER DEFICIENCIES

### (1) RESPONSIBILITY TO CORRECT

The CONSULTANT agrees to be responsible for the professional quality, technical adequacy and accuracy, timely completion, and the coordination of all data, studies, surveys, designs, specifications, calculations, estimates, plans, drawings, construction documents, photographs, reports, memoranda, other documents and instruments, and other services, work and materials performed, provided, and/or furnished by CONSULTANT or by any sub-consultant(s) and/or subcontractor(s) retained or engaged by the CONSULTANT pursuant to this Agreement. The CONSULTANT shall, without additional compensation, correct or revise any errors, omissions or other deficiencies in such data, studies, surveys, designs, specifications, calculations, estimates, plans, drawings, construction documents and instruments, and other services, work and materials resulting from the negligent act, errors or omissions or intentional misconduct of CONSULTANT or any sub-consultant(s) or subcontractor(s) engaged by the CONSULTANT.

### (2) COUNTY'S APPROVAL SHALL NOT RELIEVE CONSULTANT OF RESPONSIBILITY

Neither review, approval, or acceptance by the COUNTY of data, studies, surveys, designs, specifications, calculations, estimates, plans, drawings, construction documents, photographs, reports, memoranda, other documents and instruments, and incidental

professional services, work and materials furnished hereunder by the

(2) COUNTY'S APPROVAL SHALL NOT RELIEVE CONSULTANT OF RESPONSIBILITY (Continued)

CONSULTANT, or any sub-consultant(s) or subcontractor(s) engaged by the CONSULTANT, shall in any way relieve CONSULTANT of responsibility for the adequacy, completeness and accuracy of its services, work and materials and the services, work and materials of any and all sub-consultants and/or subcontractors engaged by the CONSULTANT to provide and perform services in connection with this Agreement. Neither the COUNTY'S review, approval or acceptance of, nor payment for, any of the CONSULTANT'S services, work and materials shall be construed to operate as a waiver of any of the COUNTY'S rights under this Agreement, or any cause of action it may have arising out of the performance of this Agreement.

3.06    LIABILITY

(1)     CONSULTANT TO HOLD COUNTY HARMLESS

The CONSULTANT shall be liable and agrees to be liable for and shall indemnify and hold the COUNTY harmless for any and all claims, suits, judgements or damages, losses and expenses including court costs and attorney's fees arising out of the CONSULTANT'S errors, omissions, and/or negligence, or those of any and all sub-consultants and/or subcontractors engaged by the CONSULTANT during the providing, performing and furnishing of services, work and materials pursuant to this Agreement and any and all Change Orders, Supplemental Task Authorizations thereto. The CONSULTANT shall not be liable to nor indemnify the COUNTY for any portions of damages arising out of any error, omission, and/or negligence of the COUNTY, its employees, agents, or representatives or third parties. The CONSULTANT hereby acknowledges that the compensation to be paid the CONSULTANT by the COUNTY as set forth in Agreement Exhibit "B" entitled "COMPENSATION AND METHOD OF PAYMENT" includes compensation as consideration for the indemnification provided herein.

3.07    NOT TO DIVULGE CERTAIN INFORMATION

CONSULTANT agrees, during the term of this Agreement, not to divulge, furnish or make available to any third person, firm, or organization, without COUNTY'S prior written consent, or unless incident to the proper performance of CONSULTANT'S obligations hereunder, or in the course of judicial or legislative proceedings where such information has been properly subpoenaed, any non-public information concerning the services to be rendered by CONSULTANT or any sub-consultant(s) or subcontractor(s) pursuant to this Agreement. CONSULTANT shall require all of its employees, sub-consultant(s) and subcontractor(s) to comply with the provisions of this paragraph.

3.08    CONSULTANT TO REPAIR PROPERTY DAMAGE CAUSED BY THE CONSULTANT

CONSULTANT agrees to promptly repair and/or replace, or cause to have repaired and/or replaced, at its sole cost and expense and in a manner acceptable to and approved by the COUNTY, any property damage arising out of, or caused by, the willful or negligent acts of the CONSULTANT, or of its sub-consultants and/or subcontractors. This CONSULTANT'S obligation under this sub-article does not apply to property damage caused by any

other Consultant or Contractor engaged directly by the COUNTY.

3.08  CONSULTANT TO REPAIR PROPERTY DAMAGE CAUSED BY THE CONSULTANT (Continued)

The COUNTY reserves the right, should the CONSULTANT fail to make such repairs and/or replacement within a reasonable period of time, to cause such repairs and/or replacement to be made by others and for all costs and expenses associated with having such repairs and/or replacement done to be paid for by the CONSULTANT, or by the CONSULTANT reimbursing the COUNTY for all such costs and expenses.

3.09  RESPONSIBILITY FOR ESTIMATES

(1) In the event the services required pursuant to this Agreement include the CONSULTANT preparing and submitting to the COUNTY, cost estimates, the CONSULTANT, by exercise of his experience, effort, knowledge and judgment, shall develop such cost estimates as are set forth in, or as may be required under the Agreement and shall be held accountable, responsible and liable for the accuracy, completeness, and correctness of any and all such cost estimates. For purposes of the Liability Provisions of this Article only, the CONSULTANT'S estimate(s) shall be considered valid and effective for a period of six (6) months from the date of the COUNTY'S acceptance of the estimate(s).

(2) The cost estimates of CONSULTANTS or SUB-CONSULTANTS engaged by CONSULTANTS, for the appraisal or valuation of property or easements, or the estimate of damages or costs associated with the acquisition of property or easements are exempted from the provisions of Article 3.09.

(3) Cost Estimates

(A) ORDER OF MAGNITUDE ESTIMATE

This is an approximate estimate made without detailed architect/engineering data. Examples include, but are not limited to, an estimate from cost-capacity curves, an estimate using scale-up or scale-down factors, and an approximate ratio estimate. This type of estimate shall be accurate within plus fifty percent (50.0%). If the bids, as described above, fail to meet this prescribed accuracy, the cost associated with the preparation and development of the ORDER OF MAGNITUDE ESTIMATE shall be recoverable by the COUNTY.

(B) BUDGET ESTIMATE

Budget in this case applies to the COUNTY'S budget and not to the budget as a project controlled document. A budget is prepared with the use of flowsheets, layouts, and equipment details. This type of estimate shall be accurate within plus twenty-five percent (25.0%). If the bids, as described above, fail to meet this prescribed accuracy, the cost associated with the preparation and development of the BUDGET ESTIMATE shall be recoverable by the COUNTY.

(C) CONSTRUCTION COST ESTIMATE.

A construction cost estimate for purposes of this Agreement is an estimate prepared on the basis of well defined engineering/architectural data and on detailed information set forth in specifications, designs or drawings which are to be used as a basis for obtaining bids or price proposals for constructing the project. This type of estimate shall be accurate within plus or minus ten percent (10%) of the cost of the construction of the project. The accuracy and reliability of a CONSTRUCTION COST ESTIMATE is vital to the COUNTY'S interests because it may be used for such purposes as, but not limited to the following; budgeting, obtaining, allocating or obligating funds for the project; evaluating and determining the reasonableness and acceptableness of bids or price proposals for construction projects; or establishing the assessment amounts for Municipal Service Benefit Units (M.S.B.U.).

In the event the COUNTY solicits and receives bids or price proposals from contractors on a construction project based on specifications, design, drawings and a CONSTRUCTION COST ESTIMATE prepared by the CONSULTANT, and the lowest bid or price proposal, submitted by a responsive and responsible bidder or proposer, which bid or price proposal exceeds the amount of the CONSULTANT'S CONSTRUCTION COST ESTIMATE by more than the percent accuracy set forth hereinabove, the CONSULTANT shall, upon notification by the COUNTY, assume responsibility for and proceed to provide and perform the following service without additional compensation:

The CONSULTANT will, subject to the review and approval of the COUNTY, modify at its expense the specifications, design, drawings and related bidding and contract documents to the extent necessary to reduce the anticipated construction costs so that the re-solicitation of bids or price proposals will realize bids or price proposals being received that are within the range of accuracy established for the CONSTRUCTION COST ESTIMATE prepared by the CONSULTANT. Any such modifications made by the CONSULTANT shall not conflict with the functional or operational requirements established by the COUNTY for the project and set forth in the Agreement or Change Order(s) or Supplemental Task Authorization(s) issued thereto, nor shall any such modifications conflict with established rules, regulations, requirements or professional standards pertaining to the design, specifications or drawings prepared by the CONSULTANT, nor shall such modifications adversely affect the safe use or operation of the constructed project.

In the event (1) the CONSULTANT'S modification of the design, specifications, drawings and related bidding and contract documents, and (2) the re-solicitation of bids or price proposals do not result in bids or price proposals being received from a responsive and responsible bidder or proposer that are within the established percent accuracy of the CONSULTANT'S CONSTRUCTION COST ESTIMATE, the costs associated with the CONSULTANT'S preparation and development of the CONSTRUCTION

COST ESTIMATE shall be recoverable by the COUNTY by an appropriate reduction in the CONSULTANT'S invoice requesting payment for services rendered.

For determination of compliance with the accuracy requirement established for the CONSTRUCTION COST ESTIMATE prepared by the CONSULTANT, the amount of the CONSTRUCTION COST ESTIMATE submitted by the CONSULTANT shall be adjusted from the date the CONSTRUCTION COST ESTIMATE was received by the COUNTY until the date bids or price proposals are received by the COUNTY, by applying the percent change in the "20 Cities Cost Index" as published in the ENR (formerly ENGINEERING NEWS-RECORD) a McGraw-Hill, Inc. publication.

If, in response to its solicitation, the COUNTY receives less than three bids or priced proposals for a project, there is the potential that such bids or priced proposals may not be a realistic representation of the costs expected to be associated with the project. If under such circumstances, and if in the professional judgment of the CONSULTANT, the low bid or the low priced proposal received from a responsive bidder or proposer does not realistically represent the costs associated with the project, the CONSULTANT may deem it appropriate to recommend the COUNTY reject any such bid(s) or priced proposal(s). If under such circumstances the COUNTY concurs with the CONSULTANT'S recommendation and rejects the bid(s) or priced proposal(s), the COUNTY will not hold the CONSULTANT responsible to, nor will the COUNTY require the CONSULTANT to, modify the specifications, design, drawings and related bidding and contract documents as set forth hereinbefore.

## 3.10 PERMITS

The CONSULTANT will be responsible for preparing and submitting all required applications and other supportive information necessary to assist the COUNTY in obtaining all reviews, approvals and permits, with respect to the CONSULTANT'S design, drawings and specifications required by any governmental body having authority over the project. Any fees required for such reviews, approvals or permits will be covered by a check issued by the COUNTY and made payable to the respective governmental body upon the CONSULTANT furnishing the COUNTY satisfactory documentation of such fees. The CONSULTANT will be similarly responsible for preparing and submitting all required applications and other supportive information necessary to assist the COUNTY in obtaining any renewals and/or extensions of reviews, approvals or permits that may be required while this Agreement is in effect. The COUNTY shall, at the CONSULTANT'S request, assist in obtaining required signatures and provide the CONSULTANT with all information known to be available to the COUNTY so as to assist the CONSULTANT in the preparation and submittal of any original, renewal or extension of required reviews, approvals or permits.

3.11 ADDITIONAL SERVICES

Should the COUNTY request the CONSULTANT to provide and perform professional services for this project which are not set forth in EXHIBIT "A", the CONSULTANT agrees to provide and perform such ADDITIONAL SERVICES as may be agreed to in writing by both parties to this Agreement.

Such ADDITIONAL SERVICES shall constitute a continuation of the professional services covered under this Agreement and shall be provided and performed in accordance with the covenants, terms, and provisions set forth in this Agreement thereto.

ADDITIONAL SERVICES shall be administered and authorized as "SUPPLEMENTAL TASK AUTHORIZATIONS" or "CHANGE ORDERS" under the Agreement. The CONSULTANT shall not provide or perform, nor shall the COUNTY incur or accept any obligation to compensate the CONSULTANT for any ADDITIONAL SERVICES unless and until a written "SUPPLEMENTAL TASK AUTHORIZATIONS" or "CHANGE ORDER" shall have been agreed to and executed by both parties.

Each such "SUPPLEMENTAL TASK AUTHORIZATION" or "CHANGE ORDER" shall set forth a comprehensive, detailed description of: (1) the Scope of the ADDITIONAL SERVICES requested; (2) the basis of compensation; and (3) the period of time and/or schedule for performing and completing said ADDITIONAL SERVICES.

3.12 TRUTH-IN-NEGOTIATIONS CERTIFICATE

The COUNTY may request the CONSULTANT to execute a Truth-in-Negotiations Certificate ("Certificate"), in a form attached as EXHIBIT "F". The Certificate shall state that wage rates and other factual unit costs supporting the compensation are accurate, complete and current at the time this Agreement is executed. The original contract price and any additions thereto shall be adjusted to exclude any significant sums by which the COUNTY determines the contract price was increased due to inaccurate, incomplete or non-current wage rates or other factual unit costs.

3.13 COMPLETION OF TASKS

Unless otherwise set forth in the Agreement the CONSULTANT shall be responsible for providing and performing whatever services, work, equipment, material, personnel, supplies, facilities, transportation and administrative support that are necessary and required to complete all of the tasks set forth in Agreement Exhibit "A" entitled "Scope of Professional Services" and Change Orders, and Supplemental Task Authorizations authorized. The compensation to be paid the CONSULTANT as set forth in Agreement Exhibit "B" entitled "Compensation and Method of Payment" and Change Orders, and Supplemental Task Authorizations authorized thereto shall be understood and agreed to adequately and completely compensate the CONSULTANT for providing and performing whatever services, work, equipment, material, personnel, supplies, facilities, transportation and administrative support that are necessary and required to complete the tasks set forth in Agreement Exhibit "A" and Change Orders, Supplemental Task Authorizations, and Work Orders authorized thereto as stated above."

## 3.14 AFFIRMATIVE ACTION BY CONSULTANT WHEN ENGAGING SUB-CONSULTANTS

Florida Statute #287.042(4)(f) establishes that agencies, including Lee County, are encouraged to spend twenty-five (25%) percent of the monies actually spent for contractual services for the purpose of entering into contracts with certified Minority Business Enterprises. Accordingly, the CONSULTANT is encouraged, when selecting or engaging the services of sub-consultants or subcontractors pursuant to this Agreement, to spend twenty-five (25%) percent of the amount of compensation established in this Agreement and in subsequent CHANGE ORDERS, and SUPPLEMENTAL TASK AUTHORIZATIONS authorized thereto for the engagement of the services of certified Minority Business Enterprise sub-consultants or subcontractors.

In furtherance of this statutory goal the COUNTY expects the CONSULTANT to take affirmative action towards achieving this goal. "Affirmative Action" as used herein shall constitute a good faith effort by the CONSULTANT to achieve the stated goal of engaging certified Minority Business Enterprise sub-consultants or subcontractors to provide or perform services and/or work pursuant to the SCOPE OF SERVICES required under this Agreement. Efforts taken by the CONSULTANT to assist the COUNTY in meeting this statutory goal must be documented in detail, records of sub-consultants or subcontractors contacted maintained, including negotiation efforts, and written Agreements maintained for services or work awarded to sub-consultants or subcontractors.

The CONSULTANT, upon receipt of a written request by the COUNTY, shall within ten (10) calendar days thereafter submit to the COUNTY copies of records and supporting documentation to show evidence of its affirmative action efforts to achieve the above stated goal.

The CONSULTANT is encouraged to contact the Lee County Department of Equal Opportunity for information and assistance regarding the COUNTY'S Minority Business Enterprise certification program and listing of certified Minority Business Enterprises.

## ARTICLE 4.00 - OBLIGATIONS OF THE COUNTY

### 4.01 DESIGNATION OF PROJECT MANAGER

The COUNTY agrees after the execution of this Agreement to promptly advise the CONSULTANT, in writing, of the person designated to serve and act as the COUNTY'S PROJECT MANAGER pursuant to the provisions of Article 2.13 of this Agreement. Such notification shall be provided to the CONSULTANT by the COUNTY'S DEPARTMENT DIRECTOR.

### 4.02 AVAILABILITY OF COUNTY INFORMATION

(1) PROJECT GUIDELINES AND CRITERIA

Guidelines to the CONSULTANT regarding requirements the COUNTY has established or suggests relative to the Project including, but not limited to such items as: goals, objectives, constraints, and any special financial, budgeting, space, site, operational, equipment, technical, construction, time and scheduling criteria are set forth in EXHIBIT "E", entitled "PROJECT GUIDELINES AND CRITERIA", which EXHIBIT "E" is attached hereto and made a part of this Agreement.

4.02    AVAILABILITY OF COUNTY INFORMATION (Continued)

   (2)  COUNTY TO PROVIDE PERTINENT REFERENCE MATERIAL

At the CONSULTANT'S request, the COUNTY agrees to provide to the CONSULTANT, at no cost to the CONSULTANT, all pertinent information known to be available to the COUNTY to assist the CONSULTANT in providing and performing the required professional services. Such information may include, but not be limited to: previous reports; plans, drawings and specifications; maps; property, boundary, easement, right-of-way, topographic, reference monuments, control points, plats and related survey data; data prepared or services furnished by others to the COUNTY such as sub-surface investigations, laboratory tests, inspections of natural and man-made materials, property appraisals, studies, designs and reports.

4.03    AVAILABILITY OF COUNTY'S DESIGNATED REPRESENTATIVES

The COUNTY agrees that the DEPARTMENT DIRECTOR and the PROJECT MANAGER shall be available within a reasonable period of time, with reasonable prior notice given by the CONSULTANT, to meet and/or consult with the CONSULTANT on matters pertaining to the services to be provided and performed by the CONSULTANT. The COUNTY further agrees to respond within a reasonable period of time to written requests submitted by the CONSULTANT.

4.04    ACCESS TO COUNTY PROPERTY

The COUNTY agrees, with reasonable prior written notice given by the CONSULTANT, to provide the CONSULTANT with access within a reasonable period of time to COUNTY property, facilities, buildings and structures to enable the CONSULTANT to provide and perform the required professional services and work pursuant to this Agreement. Such rights of access shall not be exercised in such a manner or to such an extent as to impede or interfere with COUNTY operations, or the operations carried on by others under a lease, or other contractual arrangement with the COUNTY, or in such a manner as to adversely affect the public health and safety. Such access may, or may not be, within the CONSULTANT'S normal office and/or field work days and/or work hours.

ARTICLE 5.00 - COMPENSATION AND METHOD OF PAYMENT

5.01    BASIC SERVICES

The COUNTY shall pay the CONSULTANT for all requested and authorized BASIC SERVICES rendered hereunder by the CONSULTANT and completed in accordance with the requirements, provisions, and/or terms of this Agreement and accepted by the COUNTY in accordance with the provisions for compensation and payment of said BASIC SERVICES set forth and prescribed in EXHIBIT "B", entitled "COMPENSATION AND METHOD OF PAYMENT", which EXHIBIT "B" is attached hereto and made a part of this Agreement, or on the basis of such changes to the established compensation as may be mutually agreed to by both parties to this Agreement as evidenced by a written Change Order executed by both parties.

5.02    ADDITIONAL SERVICES

The COUNTY shall pay the CONSULTANT for all such ADDITIONAL SERVICES as have been requested and authorized by the COUNTY and agreed to, in writing, by both parties to this Agreement and which have been rendered as ADDITIONAL SERVICES by the CONSULTANT and completed in accordance with the requirements, provisions, and/or terms of this Agreement and accepted by

the COUNTY in accordance with the provisions for compensation and payment of said ADDITIONAL SERVICES as set forth and prescribed in EXHIBIT "B", entitled "COMPENSATION AND METHOD OF PAYMENT", which EXHIBIT "B" is attached hereto and made a part of this Agreement, or on the basis of such changes to the established compensation as may be mutually agreed to by both parties to this Agreement as evidenced by a written Change Order or Supplemental Task Authorization executed by both parties.

5.03 METHOD OF PAYMENT

(1) MONTHLY STATEMENTS

The CONSULTANT shall be entitled to submit not more than one invoice statement to the COUNTY each calendar month covering services rendered during the preceding calendar month. The CONSULTANT'S invoice statement(s) shall be itemized to correspond to the basis of compensation as set forth in the Agreement, or CHANGE ORDER(S), and SUPPLEMENTAL TASK AUTHORIZATION(S) thereunder. The CONSULTANT'S invoice statements shall contain a breakdown of charges, description of service(s) and work provided and/or performed, and where appropriate, supportive documentation of charges consistent with the basis of compensation set forth in the Agreement, or in CHANGE ORDER(S), and/or SUPPLEMENTAL TASK AUTHORIZATION(S) thereunder.

(2) PAYMENT FOR SERVICES PERFORMED

The COUNTY shall pay the CONSULTANT for services performed using either of the following methods, or using a combination thereof:

(A) The COUNTY shall pay the CONSULTANT on the basis of services completed for tasks set forth in Exhibits "A" and "B", as evidenced by work products such as reports, drawings, specifications, etc., submitted by the CONSULTANT and accepted by the COUNTY. No payments shall be made for CONSULTANT'S Work-in-Progress until service items for which payment amounts have been established and set forth in this Agreement have been completed by the CONSULTANT and accepted by the COUNTY. Whenever an invoice statement covers services for which no work product is required to be furnished by the CONSULTANT to the COUNTY, the COUNTY reserves the right to retain ten percent (10%) of the amount invoiced until such service requirements are fully completed.

(B) The COUNTY shall pay the CONSULTANT for services performed for tasks set forth in Exhibits "A" and "B" on the basis of an invoice statement covering CONSULTANT'S Work-in-Progress expressed as a percentage of the total cost of the service and/or work required for each task invoiced in this manner. All such Work-in-Progress percentages are subject to the review and approval of the COUNTY. The decision of the COUNTY shall be final as to the Work-in-Progress percentages paid. Payment by the COUNTY for tasks on a Work-in-Progress percentage basis shall not be deemed or interpreted in any way to constitute an approval or acceptance by the COUNTY of any such service or Work-in-Progress. The CONSULTANT shall be responsible for correcting, re-doing, modifying or otherwise completing the services and work required for each

ARTICLE 23.00 - MODIFICATIONS (Continued)

In the event the COUNTY issues a purchase order, memorandum, letter, or other instruments covering the professional services, work and materials to be provided and performed pursuant to this Agreement, it is hereby specifically agreed and understood that such purchase order, memorandum, letter or other instruments are for the COUNTY'S internal control purposes only, and any and all terms, provisions and conditions contained therein, whether printed or written, shall in no way modify the covenants, terms and provisions of this Agreement and shall have no force or effect thereon.

No modification, waiver, or termination of the Agreement or of any terms thereof shall impair the rights of either party.

ARTICLE 24.00 - ACCEPTANCE

Acceptance of this Agreement shall be indicated by the signature of the duly authorized representative of the hereinabove named parties in the space provided hereinafter and being attested and witnessed as indicated.

IN WITNESS WHEREOF, the parties hereto, by their duly authorized representatives, have executed this Agreement effective the day and year first written above.

ATTEST:
CLERK OF CIRCUIT COURT
Charlie Green, Clerk

BY: Marcia Wilson

COUNTY: LEE COUNTY, FLORIDA
BOARD OF COUNTY COMMISSIONERS

BY: Ray Judah
Chairman

DATE: 2/19/08

APPROVED AS TO FORM

BY: ______
County Attorney's Office

ATTEST:

______
(Witness)

______
(Witness)

CORPORATE SEAL

Date: 09/25/01

T.Y. Lin International Const. Serv.

Steven R. Blount
(CONSULTANT)

BY: ______
(Authorized Signature)

Vice President
(Title)

DATE: 1/22/08

Date: January 11, 2008

SCOPE OF SERVICES

**CE&I Services for the Summerlin Rd / College Parkway Intersection in conjunction with Six Laning - Cypress Lake Dr. to Boy Scout Dr.**

## BASIC SERVICES

### Section 1. GENERAL SCOPE STATEMENT

The CONSULTANT shall provide and perform the following services, which shall constitute the GENERAL SCOPE of the BASIC SERVICES under the covenants, terms, and provisions of this PROFESSIONAL SERVICE AGREEMENT.

### Section 2. TASKS

Pursuant to the GENERAL SCOPE of the BASIC SERVICES stated herein above, the CONSULTANT shall perform all services and/or work necessary to complete the following task(s) and/or provide the following item(s) which are enumerated to correspond to the task(s) and/or items set forth in EXHIBIT "B" entitled "COMPENSATION AND METHOD OF PAYMENT".

**Construction Engineering Services:** The successful Consultant shall perform management engineering services required to:

1. Assure that proper coordination of the activities of all parties involved will accomplish a complete project;
2. Maintain organized, complete, accurate records of all activities and events relating to the project;
3. Provide interpretations of the plans, specifications and contract provisions of a minor nature (any major interpretations that affect the integrity of the construction plans, specifications and contract revisions, shall first be directed to the Design Consultant for their interpretations and recommendations);
4. Make recommendations to the County to resolve disputes which arise in relation to the construction contract; and
5. Maintain adequate level of surveillance of the construction contractors' activities.

Construction engineering services for this project shall include, but not be limited to, the following:

a. Consultant shall provide a resident project administrator and the requisite inspection staff to observe the contractor's on-site construction operations as required or necessary to determine that quality of workmanship and materials is such that the project will be completed in reasonable conformity with the plans, specifications, and other contract provisions prior to the start of construction.
b. Consultant shall maintain records of all significant activities and events relating to the project and estimates of all work completed by the contractor. The Consultant shall immediately report to the County apparent significant changes in quality, time, or cost as they are noted.
c. Consultant shall review the construction contractor's schedule in detail and submit a report to the County, as well as meet with and discuss with the construction contractor during the schedule review and approval process, and any updates thereto. Any subsequent construction contractor request for contract time extensions shall be reviewed by and commented on by the Consultant within the time lines set forth in the construction contractor's contract. Review of contractor requests for time extension and/or Consultant recommended alternatives shall be performed by the Consultant, as required.
d. Consultant shall maintain a log of materials entering into the work and utilized in the work with proper indication of the basis of acceptance of each shipment of material.
e. Consultant shall review and/or maintain records as required of all sampling and testing accomplished under any subsequent Agreement and shall analyze such required records to ascertain acceptability of material and completed work items.

f. Once each month, the Consultant shall prepare a tabulation of the quantity of each pay item satisfactorily completed to date. Quantities shall be based on daily records or calculations. Calculations shall be retained. The tabulation will be used for the review of the construction contractor's monthly progress estimate. The Consultant shall submit the completed tabulation to the County for review and approval if required.
g. Shop drawings and other submittals shall be forwarded to the Design Consultant by the Consultant for review of conformance to the intent of the design concept of the project plans and specifications. Shop drawings/sample submittals and approvals shall be tracked by the Consultant. Tracking shall include, but not be limited to, maintaining cognizance of the status of each submittal as it progresses through the review and approval process and procedures. The Consultant shall actively encourage all reviewers to accomplish reviews promptly.
h. Consultant shall provide to the contractor, interpretations of the plans, specifications, and contract provisions. The Consultant shall consult with the County when interpretations involve complex or otherwise significant issues or may have an impact on the cost of performing the work. When warranted by the County, the County shall request any interpretations from the Design Consultant prior to any major changes of the plans, specifications and contract revisions being clarified to the contractor by the Consultant. The County shall coordinate all requests for involvement of the Design Consultant.
i. Consultant shall analyze any and all problems that arise on the project and proposals submitted by the contractor and shall provide a recommendation to the County.
j. Consultant shall analyze changes to the plans, specifications or contract provisions and extra work which appear to be necessary to carry out the intent of the contract when it is determined that a change or extra work is necessary and such work is clearly within the scope of the original contract. The Consultant shall recommend such changes to the County for approval/disapproval.
k. When it is determined that a modification to the original contract for the project is required due to necessary change in the character of the work, the Consultant shall negotiate prices with the contractor and prepare and submit for approval/disapproval by the County an Amendment and/or change order.
l. In the event that the contractor submits a claim for additional compensation, the Consultant shall analyze the submittal and prepare a recommendation to the County covering and analyzing the validity and reasonableness, and shall conduct negotiations leading to a recommendation for settlement of the claim.
m. In the event that the contractor submits a request for extension of the allowable contract time, the Consultant shall analyze the request and prepare a recommendation to the County covering the accuracy of statement and the actual effect of the delay on the completion of the controlling work items and the costs to the County.
n. Consultant shall assist in the preparation, and submit to the County for further processing, the final completion certificate for payment and two (2) sets of signed and sealed record plans as submitted by the County's Design Contractor for the construction contract.
o. Consultant shall monitor the construction contract to the extent necessary to observe construction activities in order to verify general compliance with the requirements of permits. The County will provide the Consultant with a copy of each permit within the project limits.
p. Upon identification of a prospective changed condition or construction contract change, the extent of change shall be analyzed by the Consultant and in order of magnitude, estimate of cost and time of change, if any, will be prepared by the Consultant.
q. Consultant shall negotiate all changes with the contractor using the Consultant–prepared estimate as a basis. The Consultant shall submit the results in writing to the County within two (2) weeks of start of negotiations, or report the major differences, in writing, to the County if an agreement is not reached.
r.

**Personnel and Staffing:**

1. The Consultant shall provide qualified personnel to effectively carry out its responsibilities under any subsequent Agreement. The Consultant shall utilize only competent personnel who are qualified by experience and education.
2. The Consultant shall maintain appropriate staff after completion of the construction to complete the final report on construction costs of the project, and submittal of Record Plans. No personnel other than those designated in the executed Agreement, shall be assigned to the project by the Consultant unless authorized by the County.
3. Construction engineering and inspection forces shall be required to be retained by, or under, contract to the Consultant at all times while the contractor is working on the construction contract. If the construction contract is suspended, the Consultant forces shall be adjusted to correspond with the type of suspension; provided, however, that no member of the Consultant's forces shall be deemed to be a County employee.

**Photographs:** The Consultant shall take progress photographs each month, and submit two (2) prints of each photograph to the County. Views and timing of photographs shall be to show maximum progress. Photographs shall be clean, sharp and clearly show details. Photographs shall be submitted in sets with each photograph numbered in sequence beginning with the numeral one (1). Photographs shall be enclosed in a clear plastic protector to fit a standard 8-1/2 by 11 inch three ring binder.

**Other Services:**
1. The Consultant shall, upon written authorization by the County, perform any additional services not otherwise identified, as may be required by the County, in connection with the project. The following items are not included, but may be required of the Consultant by the County to supplement the Consultant's services under any subsequent Agreement:
    a. Consultant shall, upon review, approval and written authorization by the County, make such changes and revisions to the plans and specifications as may be required in order to complete the construction activities.
    b. Consultant shall, upon written request by the County, assist the County in preparing for arbitration hearings, or litigation that occurs during the Consultant's contract time in connection with the project.
    c. Consultant shall, upon written request by the County, provide qualified engineers and/or engineering witnesses, provide exhibits and otherwise assist the County in any litigation or hearings in connection with the construction contract(s).
    d. Consultant shall, upon written request by the County, provide overall program project control schedules for the purposes of assisting the County in overall planning and schedule of construction projects.
    e. Consultant shall, upon written request by the County, provide project cost and cash flow analysis services to assist the County with overall program financial management of the County's proposed road construction/improvement program.

2. The County agrees to compensate the Consultant for authorized additional services not included in this Summary of Services as a supplement to the basic fee for CE&I services. The amount of such fees and the specific scopes of services will be negotiated prior to the consultant providing such additional services.