UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


POSEN CONSTRUCTION, INC.,

      Plaintiff,


vs.                                                    CASE NO.: 2:11-CV-00640-UA-DNF


LEE COUNTY,
T.Y. LIN INTERNATIONAL,
CPH ENGINEERS, INC.,
STEPHEN N. ROMANO.

      Defendants.

_____/


## ORDER

This cause comes before the Court on the following:

| Dkt. 1 | Complaint |
|---|---|
| Dkt. 19 | Motion to Dismiss (Counts VIII, IX)(CPH Engineers, Inc., Stephen N. Romano, P.E.) |
| Dkt. 20 | Motion to Dismiss (Counts VI, VII) (T.Y. Lin International) |
| Dkt. 28 | Motion to Dismiss (Counts II, IV, V) (Lee County) |
| Dkt. 30 | Opposition |
| Dkt. 31 | Opposition |
| Dkt. 37 | Reply (T.Y. Lin International) |
| Dkt. 43 | Reply (CPH Engineers, Inc., Stephen N. Romano, P.E.) |
| Dkt. 55 | Complaint in Intervention (Safeco Insurance Company of America) |
| Dkt. 62 | Motion to Dismiss (T.Y. Lin International) |
| Dkt. 66 | Notice of Adoption of Motion to Dismiss (CPH, Romano) |
| Dkt. 67 | Notice of Adoption of Response (Safeco) |
| Dkt. 68 | Opposition |
| Dkt. 71 | Motion to Dismiss (Counts II, IV, V) (Lee County) |
| Dkt. 76 | Opposition |

Case No. 2:11-CV-640-FTM-UA-DNF

The Complaint in this case includes the following causes of action:

| Count I | Breach of Contract | Lee County |
|---------|--------------------|------------|
| Count II | Quantum Meruit | Lee County |
| Count III | Declaratory Judgment | Lee County |
| Count IV | Violation of Ch. 218.725, Florida Statutes | Lee County |
| Count V | Declaratory Judgment | Lee County |
| Count VI | Negligent Misrepresentation | T.Y. Lin |
| Count VII | Negligence | T.Y. Lin |
| Count VIII | Negligence | CPH |
| Count IX | Negligence | Romano |

The Complaint in Intervention includes the same causes of action.

This case is about a construction contract entered into between Posen Construction, Inc. ("Posen") and Lee County, Florida ("Lee County") to widen Summerlin Road from four to six lanes, and construct a four-lane overpass at College Parkway (the "Project"). Lee County agreed to pay Posen $25,323,685.44 to complete the Project. In addition to naming Lee County as a defendant, Posen names as defendants several other parties involved in the Project. Those named Defendants had been hired by and had contracted with Lee County instead of Posen. Specifically, Posen sues T.Y. Lin International ("TY LIN"), CPH Engineers, Inc. ("CPH"), and Stephen R. Romano ("Romano"). Posen alleges, for example, that Defendants failed to notify Posen of certain sub-surface conditions that caused significant rework. Posen also alleges that the defendants improperly approved fill material that caused several delays and additional work. Ultimately, according to Posen, the actions of Defendants caused several delays and disruptions that increased the cost of Posen's work. Posen filed this lawsuit to recover damages as a result of these various delays.

Case No. 2:11-CV-640-FTM-UA-DNF

### *Standard of Review*

Federal Rule of Civil Procedure 8(a) requires more than bare legal conclusions in order to survive a motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009).  Concerned that courts were reading too broadly its prior ruling in *Conley v. Gibson*, 355 U.S. 41 (1957), the United States Supreme Court clarified that Rule 8(a) requires a plaintiff to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court was careful to caution district courts from taking the plausibility requirement too far to a "heightened fact pleading of specifics." *Id.*  Accordingly, this Court will take a two step approach when faced with a motion to dismiss pursuant to Rule 12(b)(6): (1) eliminate from the complaint all allegations that are merely legal conclusions; and (2) take the remaining well pleaded factual allegations as true and determine if there is a plausible claim for relief.

### I.  Dkt. 28    Motion to Dismiss (Lee County)

Because the Court has the independent obligation to assure itself that it possesses jurisdiction to adjudicate the dispute, the Court will consider the sovereign immunity issue first.

Lee County moves to dismiss Counts II, IV and V of the Posen Complaint.  *See* Dkt. 28.  With regards to Count II, Lee County claims it is entitled to sovereign immunity against Posen's claim (in quantum meruit) for additional expenses because the additional expenses were neither contemplated by the contract nor allowed by a contract change order.  The parties have each discussed issues that raise questions about the Court's jurisdiction.  There are two: first, the Court lacks jurisdiction because of the Eleventh Amendment; and second, the Court lacks jurisdiction as a result of the operation of state-based sovereign immunity principles.

3

Case No. 2:11-CV-640-FTM-UA-DNF

## 1. Count II

Lee County's argument that Count II must be dismissed relies in principal on two state court decisions that narrowly define an implied wavier of sovereign immunity to exclude damages outside the scope of the express terms of a written contract.  *See County of Brevard v. Miorelli Eng'g, Inc.*, 703 So.2d 1049 (1998); *Southern Roadbuilders, Inc. v. Lee County*, 495 So.2d 189 (Fla. 2d DCA 1986).  A cursory reading of these cases initially suggests Lee County's desired outcome.  Posen, citing only a single case, summarily dismisses the application of these cases in favor of an analysis guided by the Eleventh Amendment of the U.S. Constitution.  Whether the defendants can claim sovereign immunity under the state law explained in *Miorelli* and *Southern Roadbuilders* is a question that is analytically distinct from whether the Eleventh Amendment serves as a jurisdictional bar to this lawsuit.  Both parties miss the mark by conflating the two jurisdictional issues that are potentially at play.

As a general matter, sovereign immunity is defined simply as the privilege of a sovereign not to be sued without its consent.  *See Hans v. Louisiana*, 134 U.S. 1, 16-17 (1890).  "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone but by fundamental postulates implicit in the constitutional design." *Alden v. Maine*, 527 U.S. 706, 728 (1999).  For that reason the Eleventh Amendment has been described as a jurisdictional gatekeeper for federal courts, as it "deals only with federal jurisdiction to

Case No. 2:11-CV-640-FTM-UA-DNF

hear suits against the state, not with the state's immunity from suit in any forum."[1]
*Hufford v. Rodgers*, 912 F.2d 1338, 1340-41 (11th Cir. 1990) (internal citations
omitted).  Of course, "[a] State may waive its sovereign immunity at its pleasure, and in
some circumstances Congress may abrogate it by appropriate legislation." *Virginia
Office for the Protection and Advocacy v. Stewart*, __ U.S. __, 131 S.Ct. 1632, 1638
(2011) (internal citations omitted).

## A. Eleventh Amendment Immunity

The Eleventh Amendment is not a jurisdictional bar to the instant claims against
Lee County.  While a typical Eleventh Amendment analysis is a contextual one that
requires a reviewing court to weigh three factors to determine whether a state agency or
instrumentality is an arm of the state, *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309
(11th Cir. 2003), the Court will not belabor the point because "[i]t is now well established
that the bar of the Eleventh Amendment to suit in federal courts extends to States and
state officials in appropriate circumstances, but does not extend to counties and similar
municipal corporations." *Abusaid v. Hillsborough Cty. Bd. of Cty. Comm'rs*, 405 F.3d
1298, 1314 (11th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*,
429 U.S. 274, 280 (1977)) (emphasis added); *see also Hutton v. Strickland*, 919 F.2d
1531, 1542 (11th Cir. 1990) (citing *Lundgren v. McDaniel*, 814 F.2d 600, 605, n. 4 (11th
Cir. 1987)) ("This court specifically has recognized that the Eleventh Amendment does

---

[1] The Eleventh Amendment was enacted shortly after the U.S. Supreme Court's
decision in *Chisholm v. Georgia*, 2 U.S. 419 (1793), which held that a state was subject
to suit in federal court by a citizen of another state.   That affront to the individual states'
sovereign independence was met with a swift response by Congress to abrogate the
holding in *Chisolm* and immunize states from suit in federal court without their consent.

Case No. 2:11-CV-640-FTM-UA-DNF

not prevent an award of damages against a county.").

## B. Immunity Under State Law

Whether Florida's state sovereign immunity law controls the outcome in a lawsuit in federal court sitting in diversity is a much more difficult question, one the parties have not adequately addressed. Posen cites to one case in its brief to summarily dismiss the application of the *Miorelli* decision in this case.[2] In *Beaulieu v. Bd. of Trustees of University of West Florida*, 2007 WL 2900332, at *1 (N.D. Fla. Oct. 2, 2007), Judge Vinson, without any analysis of the *Miorelli* decision (because it did not apply), held that "Section 768.28 does not apply to lawsuits in federal court nor does it waive Eleventh Amendment immunity."[3] (internal citations omitted). The claims in *Beaulieu* were

---

[2] The Court will pause to note that Posen cited to *Beaulieu v. Bd. of Trustees of University of West Florida*, 2007 WL 2900332, at *1 (N.D. Fla. Oct. 2, 2007) in its brief, but not *Cayenta Canada, Inc. v. Orange County, Florida Bd. of County Comm'rs*, 2002 WL 34373972, at *3 (M.D. Fla. Nov. 20, 2002), which takes a contrary position. *See also Financial Healthcare Assoc., Inc. v. Public Health Trust of Miami-Dade County*, 488 F. Supp. 2d 1231 (S.D. Fla. 2007(granting summary judgment against the plaintiff because "the implied contract alleged in Count II is not an express written contract and therefore it fails to escape the sovereign immunity bar as articulated in *Pan Am*).

[3] The Court agrees with Judge Vinson that Florida Statutes § 786.28 does not waive Eleventh Amendment immunity. "Evidence that a state has waived sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court." *Schoppler v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990) (citing *Florida Dept. of Health and Rehabilitative Srvcs. v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981)). Removing any doubt that might exist, the legislature stated expressly that its statutory waiver of sovereign immunity does not extend to the protections afforded by the Eleventh Amendment to the U.S. Constitution. Specifically, the legislature amended the statute to include the following passage:

No provision of this section, or of any other section of the Florida Statutes,

6

Case No. 2:11-CV-640-FTM-UA-DNF

ultimately dismissed because of Eleventh Amendment immunity. *Id.* at *1.  On the other hand, Chief Judge Conway, without any discussion as to why it applied,[4] held that a contractor's unjust enrichment claim was barred by the doctrine of sovereign immunity according to the "rationale of *Miorelli Engineering*."  *Cayenta Canada, Inc. v. Orange County, Florida Bd. of County Comm'rs*, 2002 WL 34373972, at *3 (M.D. Fla. Nov. 20, 2002).  Without clear guidance from the Eleventh Circuit, this Court is inclined to undertake the requisite analysis to determine what (if any) implication the *Miorelli* decision has on the claims pending before it.[5]

Some discussion of the history of sovereign immunity law in Florida is necessary to understand the contours of its application in this case.  In the seminal case discussing

---

> whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States

Fla. Stat., § 768.28(18).  The cited passage "reflects [the legislature's] care *not* to waive, by accident, its Eleventh Amendment immunity as part of the same legislation." *Hufford v. Rodgers*, 912 F.2d 1338, 1342 (11th Cir. 1990) (emphasis in original).  This case, however, does not implicate the Eleventh Amendment.

[4]To Chief Judge Conway's credit, not much analysis was needed because the plaintiff in that case "did not bother to respond to this potentially dispositive argument in its memorandum opposing the summary judgment motion." *Cayenta Canada*, 2002 WL 34373972, at *3.

[5] Whatever the implication, the *Miorelli* decision is certainly not a jurisdictional bar to this Court's ability to render a judgment. *Accord Nitsch v. City of El Paso*, 482 F.Supp.2d 820, 842 (W.D. Tex. 2007) ("[T]he state statute addressing sovereign immunity does not constitute a restraint on federal jurisdiction but instead serves as a restraint on state court jurisdiction that is applied with like force to the claims in federal court.").

Case No. 2:11-CV-640-FTM-UA-DNF

state sovereign immunity in contract actions, the Florida Supreme Court held that the legislature had implicitly waived its sovereign immunity by authorizing the state to enter into valid contracts with private parties.   *Pan-Am Tobacco Corp. v. Dept. of Corrections*, 471 So.2d 4 (Fla. 1984).   In contrast with the express waiver found in § 768.28, this implicit waiver of sovereign immunity stems from general law empowering state agencies to enter into contracts.   *Id.* at 5.   By authorizing state agencies to enter into contracts on behalf of the state, the legislature, according to the Florida Supreme Court, "clearly intended that such contracts be valid and binding on both parties." *Id.*   The Court in *Pan Am* limited its holding, however, to "express, written contracts." *Id.*   Applying *Pan Am* narrowly, the Second District Court of Appeal subsequently affirmed the dismissal of claims against a county for the recovery of additional construction costs and expenses that "were neither addressed in the original contract nor in any subsequent legally operative instrument." *Southern Roadbuilders, Inc. v. Lee County*, 495 So.2d 189, 190 (Fla. 2d DCA 1986).   In what it characterized as a conflict with *Southern Roadbuilders*, the Fourth District Court of Appeal later held that sovereign immunity is waived in suits arising out of a breach of either an express or implied covenant or condition of the contract. *Champagne-Webber, Inc. v. City of Ft. Lauderdale*, 519 So.2d 696, 698 (Fla. 4th DCA 1988).   The Florida Supreme Court ultimately approved the rationale of both *Southern Roadbuilders* and *Champagne-Webber*, clarifying the absence of any conflict and making an important and dispositive factual distinction between the two.   703 So.2d at 1051.   A claim for damages predicated on work "totally outside the terms of the contract" is barred by the doctrine of sovereign immunity, whereas damages caused by extra work done at the state's behest and in furtherance of the contractual covenants (express or implied) are potentially recoverable.   *Id.*

8

Case No. 2:11-CV-640-FTM-UA-DNF

Whether state sovereign immunity bars the instant quasi-contract claims pending before the Court—or any federal court sitting in diversity— necessarily requires a discussion of the principles espoused in *Erie*. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 90, n. 14 (1996) (Stevens, J., dissenting) ("[M]any of the cases decided after *Hans* in which this Court has recognized state sovereign immunity involved claims premised on the breach of rights that were rooted in state law . . . In such cases, the Court's application of the state-law immunity appears simply to foreshadow (or follow) the rule of *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), not to demark the limits of Article III."). "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie*, 304 U.S. at 78.

The applicable state law here is the *Miorelli* decision and it appears inconceivable that it would not apply in this instance. For example, § 768.28 is an express waiver by the legislature of the state's sovereign immunity from tort actions brought in Florida state courts. *Schoppler*, 903 F.2d at 1379. By definition, § 768.28 waives the state's sovereign immunity for certain actions "in accordance with the general laws of the state." Fla. Stat., § 768.28(1). That is, as the Eleventh Circuit explained, "an explicit indication that the substantive law governing actions under is state law, not federal law." *Gamble v. Florida Dept. of Health and Rehabilitative Srvcs.*, 779 F.2d 1509, 1515 (11th Cir. 1986). The Eleventh Circuit has, in a significant number of cases, acknowledged the rather benign (but nonetheless insightful) principle that the substantive law of the state will govern the applicability of immunity to state law claims. *See CSX Transp., Inc. v. City of Garden City*, 325 F.3d 1236, 1246 (11th Cir 2003) (certifying to Georgia Supreme Court a question about whether a municipal indemnification agreement is an unlawful waiver of sovereign immunity under Georgia law); *Sheth v. Webster*, 145 F.3d 1231

9

Case No. 2:11-CV-640-FTM-UA-DNF

(11th Cir. 1998) (applying Alabama law to resolve a discretionary governmental immunity claim in a diversity action in federal court); *Griesel v. Hamlin*, 963 F.2d 338, 340 (11th Cir. 1992) (adopting the view of the Second Circuit that, "in a diversity case . . . the substantive law of the state governs the applicability of immunity to state law claims . . ."); *see generally Aspen Ortho. & Sports Medic., LLC v. Apsen Valley Hosp. Dist.*, 353 F.3d 832, 837 (10th Cir. 2003) ("Every circuit to address this issue, either in pendent or diversity jurisdiction, applies the same analysis used in *Sheth*.").

If the substantive components of § 768.28, including its notice of claim provisions, are controlling in a federal diversity action, *see Hattaway v. McMillian*, 903 F.2d 1440, 1446 (11th Cir. 1990), so should be the *Miorelli* decision even though it is a recognition of an implied waiver of sovereign immunity under Florida law, in contrast with the express waiver in § 768.28. Both stem from general state law with regards to purely state law claims and, therefore, both should apply equally in a federal diversity action regarding state law claims. *See Pan-Am*, 471 So.2d at 5; *accord Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) ("[U]nder *Erie* state rules of immunity are binding in federal court with respect to state causes of action.") (internal citations omitted). The Court finds additional comfort in the result here because it is consistent with the "twin aims" of *Erie*, that is, "discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Shady Grove Ortho. Assoc., P.A. v. Allstate Ins. Co.*, __ U.S. __, 130 S.Ct. 1431, 1448 (2010) (Stevens, J., concurring in part) (quoting *Hanna v. Plumer*, 380 U.S. 460, 468 (1965)). A rule that permits in the federal forum what is clearly barred in the state forum would invariably lead to forum shopping and, as a result, inequitable results for similar claims.

10

Case No. 2:11-CV-640-FTM-UA-DNF

At bottom, the *Miorelli* decision is not a jurisdictional bar to this Court's ability to adjudicate a claim; it is merely a rule of decision that will dictate whether the claim being asserted can be successfully prosecuted.  In other words, the Florida Supreme Court established in *Miorelli* the boundaries of Florida's waiver of sovereign immunity in contract actions.  The Court agrees with Chief Judge Conway, and as the Eleventh Circuit has implied in many cases, that these particular state law immunity boundaries are as applicable in federal court as they are in state court.   To be clear, if Posen's claim is predicated on work "totally outside the terms of the contract" it will fail by application of the *Miorelli* decision.  On the other hand, claims for damages caused by additional work performed in furtherance of either express or implied covenants of the written contract fall within Florida's implied waiver of sovereign immunity as set forth by Florida's Supreme Court in *Miorelli* and *Pan Am*.

Count II, as pled and with the benefit of certain reasonable inferences, will survive Lee County's motion to dismiss at this stage.  Posen and Lee County make certain admissions against their interests on this point that assist the Court in reaching its conclusion.  Posen, for example, alleges that the additional work for which it seeks payment from Lee County "was not required by, or within the scope or contemplation of, the Contract."  *See* Dkt. 1, ¶ 200.  This additional work, according to Posen, "required that Posen perform work which materially differed from that which it had bargained for."  *See* Dkt. 1, ¶ 201.  These admissions would favor dismissal pursuant to the *Miorelli* decision.  In its response to the Intervenor complaint, Lee County alleges that "the changes did not procure a totally different item or drastically alter the quality, character, nature or type of work contemplated by the original contract." Dkt. 71, p. 10.  Lee County, by that admission, confirms the reasonableness of the inference the Court already drew, which is that the additional work is covered at least in part by the

11

Case No. 2:11-CV-640-FTM-UA-DNF

expansive contract between Lee County and Posen.  Lee County's motion to dismiss Count II of the Posen Complaint is, therefore, denied.

## B. Counts IV and V

Lee County argues that Counts IV and V should be dismissed, because "[p]ursuant to §218.735(2), Fla. Stat. (2011), Posen, having consistently missed construction deadlines, the County lawfully rejected notices specifying said deficiencies. (Composite Exhibit 3)."  Dkt. 28, p. 13.  The referenced statute does not mandate dismissal of a claim brought to adjudicate whether Lee County properly rejected the payment request.  Rather, § 218.735(2) outlines the manner in which the local government entity must reject a payment request or invoice; whereas, the subsections that follow discuss how to ultimately resolve a dispute that will typically arise when a payment request is rejected.  Lee County's Motion to Dismiss Counts IV and V is, therefore, denied.

## II.  Dkt. 71    Motion to Dismiss the Intervenor Complaint (Lee County)

Lee County also moves to dismiss Counts II, IV and V of the Intervenor Complaint.  *See* Dkt. 71.  The allegations contained in the Intervenor Complaint are substantially similar to the allegations of the Posen Complaint.  For the reasons already stated herein, Lee County's motion to dismiss Counts II, IV and V of the Intervenor Complaint is denied.

Case No. 2:11-CV-640-FTM-UA-DNF

### III. Dkt. 20   Motion to Dismiss the Posen Complaint (T.Y. Lin)

Defendant T.Y. Lin International ("TY LIN") moves to dismiss Counts VI and VII of
the Posen Complaint. *See* Dkt. 20.  TY LIN, although not ordinarily considered a state
actor for sovereign immunity purposes, seeks to dismiss both counts due to its status as
an agent of the state on this Project.  TY LIN also moves to dismiss Count VI for failing
to allege sufficient facts to state a plausible claim for relief pursuant to Federal Rule of
Civil Procedure 8(a).   Finally, TY LIN argues that Count VII fails as a matter of law
because Posen failed to allege facts supporting the existence of a legal duty, a critical
element of the negligence claim.  Each argument will be addressed in turn.

### A. Counts VI and VII are not barred by the doctrine of sovereign immunity.

TY LIN's sovereign immunity argument is based on two different provisions of
Florida's sovereign immunity statute.  *See* Fla. Stat. §§ 768.28(9)(a) and (10)(e).  For the
same reasons already discussed *supra* at section I.1.B, the Court rejects Posen's
argument that § 768.28 does not apply in federal court.  The remaining issue before the
Court is whether §§ 768.28(9)(a) and (10)(e), together or independently, immunize TY
LIN from liability as an agent of Lee County.  The Court will not answer that question in
the affirmative at this stage of the proceedings.

Section 768.28(9)(a) extends immunity beyond the state and state actors to
certain private parties in contractual privity with the state and, at the same time, acting in
the capacity as an agent for the state.  *See M.S. v. Nova Southeastern University, Inc.*,
881 So.2d 614, 617 (Fla. 4th DCA 2004).  That determination is a fact intensive one that
turns on the nature and degree of control exercised by the state over the private entity.

13

Case No. 2:11-CV-640-FTM-UA-DNF

*Stoll v. Noel*, 694 So.2d 701, 703 (Fla. 1997). Posen alleges it began certain construction operations on the Project based solely on TY LIN's representation that "Lee County D.O.T. has approved the fill material from the Veronica Shoemaker tested stockpile, for the MSE wall, please proceed with operations." Dkt. 1, ¶ 229. After work commenced, Lee County issued a stop work order and ordered Posen to excavate the fill material that TY LIN "represented was approved." Dkt. 1, ¶ 232. TY LIN's representations, according to the Complaint, "were false, and exceeded the scope of their contractual responsibilities regarding the Project." Dkt. 1, ¶ 233. TY LIN, in response, asserts that no factual basis exists for the allegation that TY LIN exceeded its contractual responsibility and takes issue with Posen's failure to attach any contract that defines the contours of TY LIN's contractual undertaking and with whom it was entered. TY LIN, therefore, attached its contract with Lee County to its motion and asks the Court to consider it (as an exception to the general rule) because it is central to Posen's claim for relief. *See* Dkt. 20, ¶¶ 6-12.

Even considering the contract, there are factual issues that must be thrashed out before the Court can determine whether TY LIN was acting in the requisite capacity to enjoy the extension of sovereign immunity provided for in § 768.28(9)(a). By way of example, TY LIN cites to the attached contract between Lee County and TY LIN for the proposition that "it makes clear that TY LIN provided construction engineering and inspection services, but did not design, supervise or direct control of Posen." Dkt. 20, ¶ 20. This, coupled with the factual averment that "[a]t all times material TY LIN acted within the scope of its employment and in good faith," according to TY LIN, is sufficient to countervail Posen's allegation that TY LIN falsely and negligently misrepresented facts regarding the quality of the fill material. The Court agrees with Posen that TY LIN's attempt to deny what is clearly alleged will not properly support dismissal under Rule

Case No. 2:11-CV-640-FTM-UA-DNF

12(b).  *See* Dkt. 31, p. 6.  The Court has not—and indeed cannot—weigh the competing
allegations proffered by the two parties and will, accordingly, deny the motion to dismiss
Counts VI and VII on those grounds.  *See, e.g., Lewis v. City of St. Petersburg*, 260 F.3d
1260, 1264 (11th Cir. 2001); *Vasquez v. City of Miami Beach*, 2012 WL 4646230, at *3
(S.D. Fla. Oct. 3, 2012).

       TY LIN directs the Court to § 768.28(10)(e) as yet another provision that extends
sovereign immunity to private parties working as agents for the state.   It is not clear,
however, that TY LIN even meets the criteria for the application of § 768.28(10)(e).  TY
LIN, again relying on its contract with Lee County (not attached to the original
Complaint), takes the seemingly unequivocal stance that the "engineering services" it
provided for the Project are "those services the legislature expressly recognized as
protected by sovereign immunity under Florida law."  Dkt. 20, ¶ 17.  According to the
statute, a firm that provides "monitoring and inspection services," if acting within the
scope of its contract with the "Department of Transportation," is afforded sovereign
immunity, but, on the other hand, a firm engaged for "design or construction" services is
not.  The inquiry ends by simply adhering to the clear language of the statute that limits
the application of § 768.28(10)(e) to firms contracting specifically with the Department of
Transportation.  *See* Fla. Stat., § 768.28(10)(e) ("For the purposes of this section, a
professional firm . . . shall be considered <u>agents of the Department of Transportation</u>
while acting <u>within the scope of the firm's contract with the Department of Transportation</u>
. . . .").  The reference to state projects within the scope of a firm's contract with the
FDOT is not a limitation that can be ignored.  The legislative history also confirms that
this particular provision was added because "tort claims related to <u>state construction
projects</u> have resulted in higher insurance premiums for [construction engineering and
inspection] <u>under contract with the DOT</u>."  *See* Florida Staff Analysis and Economic

15

Case No. 2:11-CV-640-FTM-UA-DNF

Impact Statement, S.B. 1138, April 1, 2003 (2003 Regular Session).  The contract here is between TY LIN and Lee County, and it concerns a county road, not a state road. Unless TY LIN can support its argument with authority to the contrary, this Court will not read out important limitations grafted into the statute by the legislature.

It is also worth mentioning that, even if applicable to firms contracting with the county, the statute expressly excludes protection for firms engaged for "design or construction" services.   It appears that TY LIN was engaged for the very services that the legislature carved out of the statute. *See* Dkt. 20, Exhibit 1 at A3, ¶ 1.a. Accordingly, the Court denies TY LIN's motion to dismiss on sovereign immunity grounds.

## B. Count VI survives TY LIN's facial attack.

TY LIN moves to dismiss Count VI on the grounds that it "lacks [the] requisite factual basis" to state a claim for negligent misrepresentation.  Under Florida law, a plaintiff must plead and prove the following to establish a claim for negligent misrepresentation: (1) the defendant made a misrepresentation of a material fact; (2) the defendant made the representation without knowledge of its truth or falsity, or under circumstances that it should have known of its falsity; (3) the defendant intended that the representation would induce another to act on it; and (4) and injury resulting from justifiable reliance on the misrepresentation. *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993) (applying Florida law).

TY LIN's argument misstates Florida law and attempts to obtain a dismissal by either denying facts or improperly injecting facts into the pleading from source documents not attached to the complaint.  The most illustrative example is found in

16

Case No. 2:11-CV-640-FTM-UA-DNF

footnote 2: "POSEN was expressly advised (numerous times) to proceed at its own risk until final test results/approvals regarding POSEN's proposed fill material were received verifying POSEN's emphatic claims that the proposed fill material complied with the contract specification requirements (TY LIN would be prepared to offer evidence of this fact if this issue were before Court)." Dkt. 20, p. 9. The Court is at a loss as to what persuasive value TY LIN ascribes to this proffer, especially in light of the acknowledgment that it has no relevance at this stage of the proceeding. These matters are more suitably before the Court, if at all, on a motion for summary judgment.

Each of the elements is pleaded with the specificity required under Federal Rule of Civil Procedure 9(b). *See* Dkt. 1, ¶¶ 227-237. In Florida, actions for negligent misrepresentation sound in fraud and, therefore, must be pleaded with specificity as required by Federal Rule of Civil Procedure 9(b). *See Postel Indus., Inc. v. Abrams Group Const., L.L.C.*, 2012 WL 4194660, at *2 (M.D. Fla. Sept. 19, 2012) (citing *Morgan v. W.R. Grace & Co.*, 779 So.2d 503, 506 (Fla. 2d DCA 2000)). Posen met its burden in this particular case by alleging specific statements and attaching several emails that are date and time stamped that form the basis for the alleged misrepresentations and resultant harm flowing from Posen's reliance on those statements. *See, e.g., Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). TY LIN may not like what the allegations say, but Rule 12(b)(6) is not properly invoked when one simply wants to dispute what is alleged. Therefore, the Court denies the Motion to Dismiss as to Count VI.

**C. Count VII adequately pleads facts to establish a duty of care owed by TY LIN.**

TY LIN also moves to dismiss Count VII on the grounds that Posen failed to allege facts that establish TY LIN owes a duty of care to Posen. The parties agree that

17

Case No. 2:11-CV-640-FTM-UA-DNF

whether there exists a duty depends at least in part[6] on the application of *A.R. Moyer, Inc. v. Graham*, 285 So.2d 397 (Fla. 1973).  In *A.R. Moyer*, the Florida Supreme Court, answering a certified question from the Eleventh Circuit, had to determine whether a general contractor had a direct negligence claim against a supervising architect or engineer despite a lack of contractual privity.  285 So.2d at 398.  The Florida Supreme Court answered that question in the affirmative and held that "a third party general contractor, who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of a contractual duty of an architect, has a cause of action against the alleged architect, notwithstanding the absence of privity."  *Id.* at 402.  The supervising architect, who often times has the power to stop work, must "be placed under a duty imposed by law to perform without negligence his functions as they affect the contractor."  *Id.* at 401.  Consequently, a cause of action for negligence will stand against a supervising architect or engineer when faced with allegations that "the architect or engineer was negligent in [its] exercise of supervision and control of contractor."  *Id.* at 402.

TY LIN is correct that courts have been reluctant to expand the holding of *A.R. Moyer* beyond its specific facts.  *See Casa Clara Condo. Ass'n v. Charley Toppino and Sons, Inc.*, 620 So.2d 1244, 1248 at n. 9 (Fla. 1993) ("We also limit *A.R. Moyer, Inc. v.*

---

[6] The parties dispute whether Florida Administrative Code Sections 61G15-19.001(4) and 61G15-19.001(5) establish a duty of care.  Although not dispositive with regards to TY LIN, due to the Court's finding that Posen states a claim for relief in Count VII on other grounds, the Court will briefly address Posen's argument.  The Court will not expand the meaning of the cited provisions of the Florida Administrative Code, which govern every engineer in the State of Florida, to create a duty of care to all general contractors by any engineer that may work on a project.  Such a rule would effectively override the supervisory or control element the Florida Supreme Court specifically infused in its holding in *A.R. Moyer* and, instead, hold every engineer liable to all general contractors without regard to the scope of the work.

Case No. 2:11-CV-640-FTM-UA-DNF

*Graham*, 285 So.2d 397 (Fla. 1973), strictly to its facts."); *Spancrete, Inc. v. Ronald E. Frazier & Assocs., P.A.*, 630 So.2d 1197, 1198 (Fla. 3d DCA 1994) ("Because *A.R. Moyer* has been confined strictly to its facts, the duty of care there recognized does not extend to a subcontractor."); *see also McElvy, Jennewein, Stefany, Howard, Inc. v. Arlington Elec., Inc.*, 582 So.2d 47, 49 (Fla. 2d DCA 1991). But citing those cases is not necessary to establish the principle that absent supervision or control of Posen there is no duty of care imposed on TY LIN. *See* Dkt. 20, ¶ 40. That is the holding of *A.R. Moyer* and that is the law the Court will apply to the allegations in the Complaint.

The Complaint alleges facts sufficient to establish TY LIN's control over Posen insofar as the pleading standard is concerned.[7] Posen alleges that TY LIN "was and is responsible for, among other things, supervising some or all of Posen's work under the Contract." *See* Dkt. 1, ¶ 240. "In fact, [TY LIN's] approval or certification is required, or relied upon, by the County prior to Posen receiving payment for its work." *See* Dkt. 1, ¶ 240. That allegation of control and supervision is supported by emails attached to the Complaint. *See* Dkt. 1, Exhibits. 3 and 4. In one such email, TY LIN tells Posen that "[n]o MSE wall backfill material is to be placed until approval is received from the Engineer of Record." Dkt. 1, Exhibit 3. TY LIN also represented that Lee County would not make any payments until all certifications have been received. Dkt. 1, Exhibit 3.

TY LIN disagrees and instead refers the Court to its contract with Lee County to refute the proposition that it had any control or supervision of Posen's work. It is appropriate to look at the terms of the contract, because, according to TY LIN, they "are

---

[7] The documents attached to the Complaint also permit a reasonable inference that TY LIN was, in fact, not necessarily in control of the Project but rather acting as an agent for Lee County. The Court must draw all reasonable inferences in favor of Posen at this stage, but it expects the parties to fully brief the matter at summary judgment with a fully developed factual record.

Case No. 2:11-CV-640-FTM-UA-DNF

'of record' through Plaintiff's incorporation by reference" in the Complaint.  The Court agrees that the contract between TY LIN and Lee County is central to Posen's claim for negligence (as opposed to negligent misrepresentation) because the applicable theory of liability centers on the supervision and control it had over Posen on this particular project.  *See, e.g., Bamert v. Pulte Home Corp.*, 445 Fed. App'x 256, 267-68 (11th Cir. 2011) (holding that relationship forming contracts are uniquely central to a claim when the level of control is at issue).  TY LIN argues that its agreement with Lee County "clearly demonstrate[s] that TY LIN had no authority or obligation to supervise POSEN." Dkt. 20, ¶ 40.  The Court disagrees.

For example, as one measure of control over Posen the contract states that "[t]he successful Consultant [TY LIN] shall perform management engineering services required to . . . [m]aintain [an] adequate level of surveillance of the construction contractors' activities."  *See* Dkt. 20, Exhibit 1 at A1, § 2, ¶ 5.  TY LIN also had the authority to review, maintain, and analyze all sampling and testing records to "ascertain acceptability of material and completed work items."  *See* Dkt. 20, Exhibit 1 at A1, § 2, ¶ e.

TY LIN's ability to control Posen, as indicated by those provisions, must be juxtaposed with the mere advisory role TY LIN had in other regards.  *See* Dkt. 20, Exhibit 1 at A1, § 2, ¶ c ("Review of contractor requests for time extension and/or Consultant [TY LIN] *recommended alternatives* shall be performed by the Consultant, as required.") (emphasis added); *id.* at A2, § 2, ¶ i ("Consultant [TY LIN] shall analyze any and all problems that arise on the project and proposals submitted by the contractor and shall provide a *recommendation* to the County.") (emphasis added); *id.* at A2, § 2, ¶ j ("Consultant [TY LIN] shall analyze changes to the plans, specifications or contract provisions and . . . shall *recommend* such change to the County for approval/disapproval.") (emphasis added).  On balance, the Court finds that the

20

Case No. 2:11-CV-640-FTM-UA-DNF

Complaint, even when read together with the contract between Lee County and TY LIN, states a plausible claim for relief under, at a minimum, the theory of liability set forth in *A.R. Moyer.* Accordingly, TY LIN's motion to dismiss Count VII on those grounds is denied.

## IV.  Dkt. 62  Motion to Dismiss the Intervenor Complaint (T.Y. Lin)

TY LIN also moves to dismiss Counts VI and VII of the Intervenor Complaint. *See* Dkt. 62.  The allegations contained in the Intervenor Complaint are substantially similar to the allegations of the Posen Complaint.  For the reasons already stated, TY LIN's Motion to Dismiss Counts VI and VII is denied.

## V.  Dkt. 19  Motion to Dismiss (CPH and Romano)

Defendants CPH Engineers, Inc. ("CPH") and Stephen R. Romano ("Romano) move to dismiss Counts VIII and IX, respectively, of the Posen Complaint. *See* Dkt. 19. Posen asserts two legal bases for a duty allegedly owed by CPH and Romano.  First, according to Posen, engineers are liable in tort to general contractors even though there is an absence of privity when the injury is reasonably foreseeable.  Dkt. 30, p. 8. Second, Posen is owed a duty of care pursuant to Florida Administrative Code §§ 61G15-19.001(4) and 61G15-19.001(5).  The Court is not persuaded by Posen's arguments and will dismiss Counts VIII and IX without prejudice.  Posen should not take this as a directive that a claim could not exist, but rather that none exists currently as the Complaint is drafted.[8]

---

[8] Posen and Intervenor Safeco will have an opportunity to assert an amended complaint with regards to CPH and Romano.  With discovery nearly complete, it should be readily apparent whether there exists sufficient facts to state a claim pursuant to the law set forth in this Order consistent with the mandate in Federal Rule of Civil Procedure 11.  Likewise, the other defendants should not take the denial of their

Case No. 2:11-CV-640-FTM-UA-DNF

CPH and Romano cite to *Recreational Design & Constr., Inc. v. Wiss, Janney, Elstner Assocs., Inc.*, 820 F. Supp. 2d 1293 (S.D. Fla. 2011) for the proposition that Posen must establish a "close nexus" between itself and the defendants to establish a legal duty pursuant to Florida law.  Posen disagrees that *Recreational Design* bars its claim and instead argues that it "is fully consistent" with its position.  Dkt. 30, p. 4. According to Posen, there is a simple temporal distinction to determine whether there exists liability in these construction cases: engineers involved during the project owe a duty to the contractors but engineers that become involved after the completion of the project do not.  *Id.*  That distinction is ostensibly derived from the fact that both *Recreational Design* and *E.C. Goldman, Inc. v. A/R/C Assoc., Inc.*, 543 So.2d 1268 (Fla. 5th DCA 1989), the cases cited for this proposition, involved situations in which consultants hired to perform *ex post facto* inspections of completed work were found to lack the "requisite nexus" to establish a duty of care.

The Court disagrees with Posen and instead reads *Recreational Design* as simply applying the natural progression of Florida court decisions on this point since *A.R. Moyer.*  Posen's argument creates an artificial distinction derived from a common propositional fallacy often referred to as "denying the antecedent."  The problem with denying the antecedent is that there is a logical disconnect between the antecedent and the consequent such that the predictive behavior of the consequent is not accurately

---

motions as an indication that the issues cannot be raised again at summary judgment with a fully developed factual record and a more complete analysis of the applicable law.  Specifically, the parties should address whether the *Miorelli* decision bars claims brought pursuant to the cardinal change doctrine.

linked to the nonoccurrence of the antecedent.[9] In *Recreational Design*, the court held that if an engineer is hired *after* the job is completed then there will not exist the requisite close nexus to establish a duty of care. *Recreational Design*, 820 F. Supp. 2d at 1301. It, however, does not logically follow (as Posen suggests) that if an engineer is hired before the completion of the job then there necessarily exists the close nexus to establish a duty of care.

The Florida Supreme Court in *A.R. Moyer* specifically held that something more than being hired prior to completion of the job is required to provide the sufficient nexus:

> Each of the [following] conditions would present a cause of action: (a) *supervising* architect or engineer is negligent in preparation of plans and specifications; (b) the *supervising* architect or engineer negligently causes delays in preparation of corrected plans and specifications; (c) the *supervising* architect or engineer negligently prepared and negligently supervised corrected plans and specifications; (d) the *supervising* architect or engineer negligently failed to award an architect's certificate upon completion of the project; (e) the architect or engineer was negligent in exercise *of supervision and control of* contractor; ((f) is a repetition of (e)).

285 So.2d at 402 (emphasis added). The common theme in each of the above mentioned factual scenarios is the presence of a supervisory role or element of control by the architect and engineer. The Court must be careful not to read out that important modifier in each factual scenario. The phrase "close nexus," as used in *Recreational Design*, is simply another way to state that supervising architects and engineers are liable for the foreseeable injuries to general contractors proximately caused by their negligent conduct even when there is an absence of contractual privity, whereas

---

[9] The following propositional fallacy is a common illustration: if I go to the drug store then I will buy milk. If one denies the antecedent, then one would posit that if I do not go to the drug store I will not buy milk. Of course, the logical disconnect is obvious because one could buy milk at a location other than the drug store.

Case No. 2:11-CV-640-FTM-UA-DNF

nonsupervising engineers and architects—irrespective of when they are hired—will not be. *A.R. Moyer*, 285 So.2d at 402. The Court does not believe the court in *Recreational Design* was making a temporal distinction, but rather acknowledging the point that a consultant hired after the job is completed cannot have a supervisory role.

There is no allegation that CPH or Romano exercised any control over Posen. Moreover, Posen's argument, even ignoring the absence of an allegation of control, is predicated on a now outdated pleading standard. Posen asserts that the Court should only dismiss its claims if the pleadings "show that the plaintiff has no claim whatsoever." Dkt. 30, p. 3. That is an iteration of Federal Rule of Civil Procedure 8(a) as it was formerly understood in the wake of *Conley v. Gibson*, 355 U.S. 41 (1957). But nearly six years ago the United States Supreme Court made it clear that *Conley's* "no set of facts" language "is best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 55 U.S. at 562-63. The retired standard was replaced with a standard that requires sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* at 570. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The Court uses a two-tiered approach that accepts as true all factual allegations and discounts (or ignores entirely) all conclusory statements that are mere formulaic recitations of the legal elements of the claim to determine whether a plausible claim for relief is stated. *See Iqbal*, 556 U.S. at 679-81. Pursuant to that framework, the only factual allegations to which the Court is obliged to afford any weight are that CPH and Romano "performed engineering and design services in connection with the Project, including, among other things, preparing, signing, checking, or approving the Project drawing." Dkt. 1, ¶¶ 247, 259. What remains are classic examples of conclusory legal elements that, prior to *Twombly*, would often pass muster as sufficient to put a defendant on fair notice of the claim being asserted

24

Case No. 2:11-CV-640-FTM-UA-DNF

against it.  No longer will it suffice to merely allege that a defendant has a duty and proceed to trial; the facts supporting the duty must also be alleged.

CPH's and Romano's Motion to Dismiss Counts VIII and IX of the Intervenor Complaint is granted.  If Posen can allege facts to support a claim for negligence based on a theory of liability supported by Florida law, whether it be the supervising engineer theory espoused in *A.R. Moyer* or some other supportable theory, the Court will permit it to file an amended pleading.  The amended pleading must be filed within fourteen (14) days of this order.

## VI.  Dkt. 66    Motion to Dismiss Intervenor Complaint (CPH, Romano)

CPH and Romano also move to dismiss Counts VIII and IX, respectively, of the Intervenor Complaint by incorporation of its motion to dismiss the Posen Complaint. *See* Dkt. 66.  The allegations contained in the Intervenor Complaint are substantially similar to the allegations of the Posen Complaint.  For the reasons already stated, CPH's and Romano's motion to dismiss Counts VIII and IX of the Intervenor Complaint is granted, also with leave to amend.

Accordingly, it is

**ORDERED** that: Lee County's Motion to Dismiss the Complaint with Memorandum of Law (Dkt. 28) is **denied**; Lee County's Motion to Dismiss Against Intervenor Safeco Insurance Company of America (Dkt. 71) is **denied**; T.Y. Lin International's Motion to Dismiss Based on Sovereign Immunity and Failure to State a

Case No. 2:11-CV-640-FTM-UA-DNF

Cause of Action (Dkt. 20) is **denied**;  T.Y. Lin International's Motion to Dismiss Safeco Company of America's Complaint in Intervention (Dkt. 62) is **denied**; CPH Engineers, Inc.'s and Stephen N. Romano, P.E.'s Motion to Dismiss and Incorporated Memorandum of Law (Dkt. 19) is **granted**; CPH Engineers, Inc.'s and Stephen N. Romano, P.E.'s Notice of Adopting CPH Engineers, Inc.'s and Stephen N. Romano, P.E.'s Motion to Dismiss and Incorporated Memorandum of Law (Dkt. 66) is **granted**.

**IT IS FURTHER ORDERED** that Posen and Safeco shall have fourteen (14) days from the date of this order to file an Amended Complaint against CPH Engineers, Inc., and Stephen N. Romano, P.E.

**DONE AND ORDERED** in Chambers in Tampa, Florida this 31 day of January, 2013.

ELIZABETH A. KOVACHEVICH
United States District Judge

Copies furnished to:
All Counsel of Record

26